UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

MOISES BARRAGAN,

                 Petitioner,

v.

TIMOTHY FILSON, *et al.*,

                 Respondents.

Case No. 3:17-cv-00453-LRH-CBC

ORDER

This is a habeas corpus proceeding under 28 U.S.C. § 2254 brought by Moises Barragan, a Nevada prisoner convicted of several crimes in state court. Before the court for decision are respondents' motion to dismiss (ECF No. 22) and Barragan's motion for leave to conduct discovery (ECF No. 35). As grounds for their motion, respondents argue that Barragan's second amended petition was untimely filed and contains grounds that are procedurally barred and/or unexhausted. With his request for discovery, Barragan asks permission to depose three individuals who, according to him, will assist him in demonstrating that he is actually innocent of crimes for which he has been convicted. For reasons that follow, the court grants respondents' motion to dismiss and denies petitioner's motion for leave to conduct discovery.

I.    PROCEDURAL HISTORY[1]

In January 2009, a jury sitting in the Eighth Judicial District Court for Clark County, Nevada, found Barragan guilty of (1) conspiracy to commit a crime, (2) first degree murder with use of a deadly weapon, (3) attempted murder with use of a deadly

---

[1] This procedural history is derived from the exhibits filed at ECF Nos. 23-27 and this court's own docket.

weapon with the intent to promote, further, or assist a criminal gang, and (4) discharging a firearm out of a motor vehicle. After a sentencing hearing, a judgment of conviction was entered on May 14, 2009, that includes several concurrent and consecutive terms of imprisonment, including two consecutive life sentences on the first-degree murder with use of deadly weapon count. Barragan filed a direct appeal.

On May 7, 2010, the Nevada Supreme Court entered an order affirming the judgment of conviction. On June 26, 2013, Barragan filed a state petition for writ of habeas corpus that was followed by a counseled amended petition. The state district court concluded that Barragan's petition was procedurally barred as untimely under Nev. Rev. Stat. § 34.726. On appeal, the Nevada Court of Appeals affirmed the lower court. Those proceedings were concluded with a remittitur issued on February 23, 2017. Barragan's only other state court proceeding was a "motion to correct and clarify an illegal sentence pursuant to NRS 176.555" that was filed in September 2017 and denied in December 2017, with no appeal.

On July 27, 2017, Barragan initiated this proceeding by filing a counseled, federal petition for writ of habeas corpus. He also filed an *ex parte* motion for appointment of counsel, which the court granted. On October 30, 2017, Barragan filed a first-amended petition. On August 28, 2018, Barragan filed a second-amended petition, which is the subject of respondents' motion to dismiss.

II.  DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year filing period for § 2254 habeas petitions in federal court. 28 U.S.C. § 2244(d)(1). The one-year period begins to run from the latest of four possible triggering dates, with the most common being the date on which the petitioner's state court conviction became final (by either the conclusion of direct appellate review or the expiration of time for seeking such review). *Id.* Statutory tolling of the one-year time limitation occurs while a "properly filed" state post-conviction proceeding or other collateral review is pending. 28 U.S.C. § 2244(d)(2).

| | |
|---|---|
|1| A collateral challenge in state court is not "properly filed" for purposes of 28 |
|2| U.S.C. § 2244(d)(2) if a state court determines it was not timely filed under state law. |
|3| *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). In other words, "[w]hen a |
|4| postconviction petition is untimely under state law, 'that [is] the end of the matter' for |
|5| purposes of § 2244(d)(2)." *Id.* at 414 (citation omitted). Also, once a state post- |
|6| conviction proceeding pursuant to a properly filed application has concluded, the |
|7| statutory time period resumes running. |
|8| Respondents argue this federal proceeding must be dismissed under AEDPA's |
|9| statute of limitations because Barragan filed his petition 2,548 days after his conviction |
|10| became final on August 5, 2010. Barragan does not dispute respondents' time |
|11| calculation. He argues, however, that the court may still consider his petition because |
|12| he is actually innocent of the charged crimes and/or he is entitled to equitable tolling. |
|13| 1. *Actual innocence.* |
|14| In *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court held that |
|15| actual innocence, if proved, serves as a gateway through which a petitioner may bypass |
|16| the expiration of the AEDPA statute of limitations. 569 U.S. at 386. The Court also |
|17| noted, however, that tenable actual innocence claims are rare. *Id.* Under *Schlup v. Delo*, |
|18| 513 U.S. 298 (1995), "a petitioner does not meet the threshold requirement unless he |
|19| persuades the district court that, in light of the new evidence, no juror, acting |
|20| reasonably, would have voted to find him guilty beyond a reasonable doubt." 513 U.S. |
|21| at 329. Put another way, "actual innocence" is established when, in light of all the |
|22| evidence, "it is more likely than not that no reasonable juror would have convicted [the |
|23| petitioner]." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup*, 513 |
|24| U.S. at 327-28). The petitioner must establish his factual innocence of the crime, and |
|25| not mere legal insufficiency. *Id.*; *Jaramillo v. Stewart*, 340 F.3d 877, 882-83 (9th Cir. |
|26| 2003). To demonstrate actual innocence to overcome a procedural bar under |
|27| *McQuiggin* and *Schlup*, a petitioner must present "new reliable evidence — whether it |
|28| |

3

be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.

The State presented evidence at trial, which is not disputed here, that on March 21, 2007, a car containing Barragan, Jose Escamilla, and Eduardo Escamilla encountered three individuals walking on a Las Vegas street, whereupon the front passenger of the car leaned out the window and fired one shot, injuring one of the three and killing another. ECF No. 33, p. 6-9. Barragan's actual innocence claim is premised on the contention that he was the driver of the car, not the passenger who fired the shot, as the State alleged at trial.

The evidence Barragan proffers consists of his own declaration, signed on April 27, 2019, ten years after his trial, and the declaration of Maribel Yanez, a staff investigator with Nevada's Federal Public Defender. ECF Nos. 34-1 and 34-2.

In his declaration, Barragan states the following. He "was not the shooter and did not know the shooting was going to take place." ECF No. 34-1, p. 2. He was wearing sunglasses and had a moustache and a goatee on the day the shooting. *Id.*, p. 3. The car he was driving on the day of the shooting has a manual transmission and he was the "only person among the three people in the car who could drive a manual transmission." *Id.* As the driver when the incident took place, he took a route that he thought would avoid the three people on foot, with whom one of the passengers in the car had already exchanged words. *Id.* He "did not intend for the shooting to take place and did not know the shooting was going to take place." *Id.*, p. 4. He was also "hoping to avoid any further confrontation with the group." *Id.*

In her declaration, Yanez states the following. She contacted both Jose Escamilla and Eduardo Escamilla about the shooting. ECF No. 34-2, p. 2. After asking her why she needed the information, Jose told her only that "we didn't do it." *Id.* Eduardo told her he couldn't "think of anything that could help Moises." *Id.* She also sought information from Jacob Herrera and Jerry Holman, but was only able to contact

4

the latter, who is an inmate at Ely State Prison.[2] *Id.*, p. 3-4. Holman related to her that Barragan was driving the entire time he was with him on the day of the shooting and that he had "never seen Eduardo or Jose Escamilla drive a manual transmission vehicle," including the car involved in the shooting. *Id.*, p. 4. Holman also told her that he recalled Barragan having a mustache on the day of the shooting and that "[t]he identity of the shooter was common knowledge among the residents in the neighborhood" and it was not Barragan. *Id.*

Neither declaration contains compelling exculpatory information. Barragan's belated and self-serving declaration that he was the driver, not the shooter, is not the type of reliable evidence that can establish his actual innocence under *Schlup*. *See Schlup*, 513 U.S. at 332 (court assessing actual innocence claim may consider "how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of [the new] evidence"); *see also Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002) (" '[S]elf-serving statements by a defendant that his conviction was constitutionally infirm are insufficient to overcome the presumption of regularity accorded state convictions.'" (citation omitted)); *McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007) ("Oyd McCray's affidavit and testimony that he was not on Bessemore Street at the time of the murder adds little in the way of quality to his actual-innocence claim. A reasonable juror surely could discount his own testimony in support of his own cause."); *David v. Hall*, 318 F.3d 343, 348 (1st Cir. 2003) (petitioner made no showing of actual innocence when his actual innocence claim relied upon his "own self-serving testimony about his own mental state").

As for Yanez's declaration, only Holman was able to provide what might be considered exculpatory information. Even disregarding their hearsay nature, however, Holman's statements fall well short of establishing Barragan's actual innocence. His statement that he had "never seen" either of the Escamilla brothers drive a manual

---

[2] On the day of the shooting, Herrera and Holman were passengers in the car, along with the Escamillas and with Barragan driving, but had been dropped off prior to the shooting. ECF No. 33, p. 6-7.

transmission does not establish that neither was able to do so. Holman's recollection as to Barragan having a moustache, even if reliable, is not "new evidence" inasmuch as the defense, at trial, cited evidence of Barragan's facial hair and argued that it conflicted with witness testimony that the shooter was clean shaven. ECF No. 25-11, p. 28-33. His claim as to the "common knowledge" of the residents of the neighborhood is nugatory given that he fails to identify with any specificity who possessed this knowledge or what facts supported it, not to mention the name of the actual shooter.

In addition to the declarations, Barragan points to the preliminary hearing testimony of Christopher Harden and Oreion Martin as new evidence this court must consider in its actual innocence analysis. ECF No. 33, p. 10 (citing ECF No. 23-11, p. 8, 17, 19). Harden and Martin are the two men who were with the murder victim, Andre Devoe, when he was shot. The State's theory at trial was that Barragan was driving during the initial encounter with the three men, but that he switched seats with the front passenger before the shooting. ECF No. 25-11, p. 18. Barragan argues that Harden and Martin's preliminary hearing testimony establishes that he was the driver during both encounters.

Notwithstanding the ready availability of this testimony at the time of trial, Barragan argues defense counsel's failure to elicit this evidence at trial makes it "newly presented," thereby qualifying it as new evidence for the purposes of *Schlup. See Griffin v. Johnson*, 350 F.3d 956, 961-63 (9th Cir. 2003) (holding that evidence need only be "newly presented," not "newly discovered," to be new evidence under *Schlup*). Be that as it may, Martin's preliminary hearing testimony on this point is vague and can hardly be considered "new reliable evidence." ECF No. 23-11, p. 17, 19. Harden's testimony is clearer in that he responded in the affirmative when asked "if the people in the car were in the same seating positions" during both encounters. *Id.*, p. 8. At trial, however, Barragan's counsel focused his cross-examination of Harden on Harden's inability to recognize *anybody* in three line-ups, which may have been more effective than pressing him on seating positions. ECF No. 25-8, p. 128-30.

Both Martin and Harden identified Barragan as the shooter at the preliminary hearing and at trial. ECF No. 23-11, p. 5, 21; ECF No. 25-8, p. 33-34, 123. In rare circumstances, impeachment evidence alone can satisfy the *Schlup* standard. *See Sistrunk v. Armenakis*, 292 F.3d 669, 676 (9th Cir. 2002). Even so, impeachment evidence meets the standard only if it is so compelling that it "fundamentally call[s] into question the reliability of [the petitioner's] conviction." *Id.* at 677. That is not the case here.

Beyond the foregoing, Barragan's actual innocence claim consists, in large part, of him re-arguing the evidence presented at his trial. Such an approach is wholly unpersuasive. *See House v. Bell*, 547 U.S. 518, 538 (2006) (reiterating that *Schlup* analysis assesses the impact of new evidence the jury did not have before it).

Barragan has not made a viable claim that actual innocence allows him to bypass AEDPA's statute of limitations.

### 2. *Equitable tolling.*

Equitable tolling is appropriate only if the petitioner can show: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)). The petitioner ultimately has the burden of proof on this "extraordinary exclusion." *Miranda*, 292 F.3d at 1065. He must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). *Accord Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007).

Barragan premises his equitable tolling claim on allegations that his direct appeal attorney abandoned him and that his state post-conviction attorney neglected to file a

protective federal petition. With respect to the former, he alleges that, after learning in May 2010 that his direct appeal had been denied, he wrote several letters to his direct appeal attorney, T. Augustus Claus, inquiring about the status of his case and whether Claus intended to file a post-conviction petition on his behalf. He further alleges that Claus eventually withdrew as counsel, whereupon he (Barragan) filed a series of pro se documents in state court, including a petition.

To support his claim, Barragan has provided the court with copies of six letters he sent to Claus between June 3, 2010, and April 25, 2011. ECF No. 26-7, p. 45-50, 54. Barragan also sent a letter to the Nevada Supreme Court on April 17, 2011, asking for assistance with a habeas corpus petition. ECF No. 26-7, p. 51-52. Claus filed his motion to withdraw on September 11, 2012, and served Barragan with a copy by mail. ECF No. 26-6. On June 26, 2013, Barragan filed his pro se petition in the state district court. ECF No. 26-8.

Barragan contends that *Holland* and *Maples v. Thomas*, 565 U.S. 266 (2012), provide authority for granting him equitable tolling. In *Holland*, counsel "failed to file Holland's federal petition on time despite Holland's many letters that repeatedly emphasized the importance of his doing so." *Holland*, 560 U.S. at 652. In addition, counsel "failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information," and "failed to communicate with [Holland] over a period of years, despite various pleas from Holland that [counsel] respond to his letters. *Id.* In *Maples*, the petitioner's attorneys failed to notify him that they had changed jobs and stopped pursuing his case, and as a result, he missed a state filing deadline. 565 U.S. at 275-78.

The problem for Barragan is that, unlike the attorneys in *Holland* and *Maples*, Claus did not have an ethical obligation to pursue post-conviction relief for Barragan. *Cf. Holland*, 560 U.S. at 635–36; *Maples*, 565 U.S. at 277–78. Accordingly, he did not "abandon" Barragan and, at most, he is guilty to failing to respond to Barragan's letters for a period of months. *See Maples*, 565 U.S. at 282 (adopting Justice Alito's concurring

opinion in *Holland*, which "homed in on the essential difference between a claim of attorney error, however egregious, and a claim that an attorney had essentially abandoned his client"); *Rudin v. Myles*, 781 F.3d 1043, 1055 (9th Cir. 2015) (applying Alito's distinction to equitable tolling claim).

In addition, Barragan learned about the denial of his direct appeal the same month it occurred and indicated in his April 17, 2011, letter to the Nevada Supreme Court that he had until May 7, 2011, to file a timely habeas petition.[3] Despite his general awareness of this deadline, he waited until June 2013 to initiate state post-conviction proceedings. And, even if he continued to rely on Claus for assistance for some period beyond April 2011 (which is unlikely given the apparent cessation of his letters to Claus), Barragan waited approximately nine months after being notified of Claus's withdrawal to file his state petition.

In summary, Claus's alleged misconduct was not an extraordinary circumstance that stood in Barragan's way and prevented timely filing. Also, Barragan did not pursue his rights diligently.

Barragan's allegations regarding his state post-conviction counsel are even less convincing. He faults his counsel, Lisa Rasmussen, for not filing a protective federal petition while his state petition was pending because she should have known that, if the state court found his petition untimely (which it eventually did), it would not qualify for statutory tolling under Section 2244(d)(2). *See Pace*, 544 U.S. at 417. Here again, counsel's conduct was, at most, a matter of negligence, not the type of attorney misconduct or abandonment that would give rise to equitable tolling. Rasmussen filed Barragan's federal petition less than two months after the conclusion of his state court proceedings and the record indicates she was otherwise diligent in pursuing post-conviction relief for Barragan. *See* ECF Nos. 26-19, 26-20, 26-25, 26-27, 26-31, 26-32, 27-1, 27-4. *Cf. Gibbs v. Legrand*, 767 F.3d 879, 887 (9th Cir. 2014). (finding equitable

---

[3] In actuality, he had until June 2, 2011, one year from the date the Nevada Supreme Court issued its remittitur in relation to his direct appeal. See ECF No. 26-5; Nev. Rev. Stat. § 34.726.

9

tolling where counsel failed to communicate with petitioner over a period of years, despite repeated efforts by petitioner to engage him and counsel's guarantee that he would update petitioner about his case). Moreover, because Barragan's one-year period had already elapsed and he is not otherwise entitled to equitable tolling, a protective petition would not have benefitted him even if Rasmussen filed it on October 22, 2013, the effective date of her appointment. *See* ECF No, 26-18.

In sum, the allegations and evidence before the court fail to establish that this is "an 'extraordinary' instance in which petitioner's attorney's conduct constituted far more than 'garden variety' or 'excusable neglect.'" *Holland*, 560 U.S. at 652. Equitable tolling has been denied in cases of attorney error significantly more egregious than any demonstrated here. *See, e.g., Miranda*, 292 F.3d at 1067–68 (attorney's erroneous advice to client regarding the date his limitations period ended held not to constitute an extraordinary circumstance); *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) (attorney's miscalculation of the limitations period and negligence in general held not to warrant equitable tolling, because a lawyer's mistake is not an extraordinary circumstance).[4]

       3. *Discovery motion.*

Barragan asks the court's permission to depose Jose Escamilla, Eduardo Escamilla, and Jacob Herrera, arguing that, if they were to testify truthfully under oath, they would provide information establishing that Barragan was the driver, not the shooter.

A federal habeas court may authorize parties to conduct discovery upon a showing of good cause. Rule 6(a) of the Rules Governing Section 2254 Proceedings. Good cause under Rule 6(a) exists "where specific allegations before the court show reason to believe that the petitioner may, if facts are fully developed, be able to

---

[4] This court also sees no merit to Barragan's claim that the state court is partially at fault for his late filing because it "initially suggested it might determine [he] could show good cause" to excuse his late filing. ECF No. 22, p. 24. He makes no showing that the state court affirmatively misled him on this point or that he relied on the state court's representations in delaying the filing of his federal petition. *See Sossa v. Diaz*, 729 F.3d 1225, 1235 (9th Cir. 2013).

demonstrate that he is ... entitled to relief ...." *Bracy v. Gramley*, 520 U.S. 899, 908–09, (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). Habeas petitioners may not, however, "use federal discovery for fishing expeditions to investigate mere speculation." *Calderon v. U.S. Dist. Court*, 98 F.3d 1102, 1106 (9th Cir.1996). *See also Kemp v. Ryan*, 638 F.3d 1245, 1260 (9th Cir.2011) ( "Kemp's claim of a jail-wide policy of eliciting incriminating statements has many of the indicia of an improper 'fishing expedition,' and the desire to engage in such an expedition cannot supply 'good cause' sufficient to justify discovery."); *Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir.1999) (petitioners may not seek to use discovery as a "fishing expedition ... to explore their case in search of its existence.") (quoting *Calderon v. U.S.D.C. (Nicolaus)*, 98 F.3d at 1106).

As discussed above, the "evidence" Barragan has presented so far lacks credibility and/or probative force with respect to meeting the *Schlup* standard. With his discovery motion, he offers nothing more than a *possibility* that the individuals he seeks to depose *might* provide information helpful to his actual innocence claim, despite his unsuccessful attempts to obtain such information from the same individuals in the past. Finding lack of good cause under *Bracy*, the court will deny Barragan's motion for leave to conduct discovery.

III.    CONCLUSION

Barragan filed this federal habeas action well beyond AEDPA's one-year filing period. He has failed to show that he is entitled to bypass the statute of limitations due to his actual innocence or equitable tolling. Thus, the court shall dismiss his petition as untimely without addressing respondents' alternative defenses of procedural default and exhaustion.

IT IS THEREFORE ORDERED that respondents' motion to dismiss (ECF No. 22) is GRANTED. Petitioner's second amended petition for writ of habeas corpus (ECF No. 16) is dismissed with prejudice as untimely. The Clerk shall enter judgment accordingly and close this case.

1       IT IS FURTHER ORDERED that a certificate of appealability is DENIED as reasonable jurists would not find the court's decision debatable or wrong.

      IT IS FURTHER ORDERED that Barragan's motion for leave to conduct discovery (ECF No. 35) is DENIED.

      IT IS FURTHER ORDERED that all pending motions for extension of time (ECF Nos. 28, 30, 31, 32, 37, 38, 39, and 42) are GRANTED *nunc pro tunc* as of their respective filing dates.

      DATED this 27th day of August, 2019.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE